(February 16, 1884.)

## PEOPLE v. STAPLETON.

[3 Pac. 6.]

BURGLARY—STATUTORY CONSTRUCTION.—In section 59, Crimes and Punishments, Revised Laws, page 332, wherein it provides that "every person who shall in the night . . . . break and enter in a dwelling-house or tent with intent to commit murder, robbery, mayhem, larceny or other felony," the term "larceny" applies alike to grand and petit larcenies.

INDICTMENT—VALUE OF PROPERTY.—In an indictment for burglary drawn under the statute it is not necessary to allege the value of the property intended to have been stolen.

MOTION AND ARREST OF JUDGMENT—OBJECTIONS TO INDICTMENT.—Objection to an indictment "that it does not substantially conform to sections 233 and 234 of the Criminal Practice Act" cannot be taken advantage of upon a motion in arrest of judgment, under section 426. Such objections, if made at all, must be made by demurrer under section 285 as limited by section 293.

(Syllabus by the court.)

APPEAL from District Court, Ada County. Affirmed.

G. W. Adams, for Appellant.

No brief on file.

T. D. Cahalan, District Attorney, for the People.

BUCK, J.—The defendant, W. S. Stapleton, was tried, convicted, and sentenced at the November term of the district court in Ada county on an indictment for burglary. When called upon to plead, he entered the plea of not guilty, and made no objection to the form or substance of the indictment, by demurrer or otherwise. Upon the rendition of the verdict, the defendant moved an arrest of judgment—1. On the ground that the indictment does not substantially conform to section 234 of the Criminal Practice Act, in that it does not give the legal appellation of the offense attempted to be charged, and is not certain as to the offense attempted to be set forth; 2. That the facts stated in said indictment do not constitute a public offense, in this, that it does not appear upon the face of said indictment that defendant attempted to commit a felony, there being no allegation therein that the value of the goods and property intended to have been stolen by the defendant were of the value of sixty dollars, or of any value.

The assignment of error sets out error in the refusing of the court to grant an arrest of judgment, and, in addition thereto, the refusal to give the following instructions, at the request of the defendant: "1. In order to find the defendant guilty, as charged in the indictment, the jury are instructed that the evidence must prove, beyond a reasonable doubt, that the defendant, with a felonious intent, did attempt to forcibly break and enter the alleged dwelling-house, in the night, with the further felonious and concurrent intent of committing a felony therein by then and there stealing and carrying away the goods, property, and money of J. P. Gordon, therein, being of the value of sixty dollars or more, and this intent to commit said felony must be proved to have existed in the mind of defendant, as a matter of fact, and not as a presumption of law; 2. If the jury are in doubt upon any material fact sought to be

proved by the prosecution, or upon the general evidence intro-
duced as to the guilt of the defendant, they should give the
defendant the benefit of the doubt, and acquit." Error is also
alleged in the giving by the court of the following instruction:
"It is not necessary for the prosecution to prove that the de-
fendant intended to steal sixty dollars' worth of money or prop-
erty, or more, but it will be sufficient if the jury believe from
the evidence, beyond a reasonable doubt, that the said defend-
ant then and there intended to steal any amount, either more
or less than sixty dollars' worth of property or money. The
intent of the defendant is to be gathered from his acts and all
the circumstances."

The first instruction asked by defendant and refused by the
court, and the instruction given by the court and excepted to
by defendant, both involve the main question at issue in the
motion for arrest of judgment (namely, must the intended
larceny, as charged in the indictment, necessarily be a felony?)
and can be disposed of in the consideration of that branch of
the case.

The remaining objection, to wit, the refusal to give the fol-
lowing instruction: "If the jury are in doubt upon any mate-
rial fact sought to be proved by the prosecution, or upon the
general evidence introduced as to the guilt of the defendant,
they should give the defendant the benefit of the doubt, and
acquit"—involves the question of doubt, which is perhaps of
all ideas the most difficult for juries to understand and apply.
Section 357 of our Criminal Practice Act (Revised Laws, 415)
provides that "in case of a reasonable doubt whether defend-
ant's guilt be satisfactorily shown, he is entitled to be ac-
quitted." The doubt here provided for is a reasonable one,
and courts have for years exercised their ingenuity and learn-
ing in endeavoring to frame an instruction which would con-
vey to a jury a practical understanding of a reasonable doubt,
with little satisfaction to themselves, and probably little as-
sistance to the juries. In the instruction asked for, however,
the court is relieved of any effort to define that perplexing
term, but is asked to instruct the jury that in case of any
doubt they must acquit. Such an instruction, if good in one
case, would be good in all, and would render a conviction for

crime almost impossible. The instruction was properly refused.

The first ground upon which the motion in arrest of judgment was asked was that the indictment did not conform to section 234 of the Criminal Practice Act. Section 293 "provides that when the objections mentioned in section 285 of said act appear upon the face of the indictment they can only be taken advantage of by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment, or that the facts do not constitute a public offense, may be taken in arrest of judgment." That the indictment does not substantially conform to section 234 is one of the grounds provided for by section 285, and such an objection should be taken by demurrer, unless section 293 is abrogated by section 426. The two sections are apparently inconsistent, and a judicial construction seems necessary to the intelligent understanding of our criminal practice. These two sections are found in the same act, and, if possible, should be so construed as to give force and effect to both. It is not to be presumed that the legislature intended that any part of a statute should be without its proper meaning, force, and effect. The established rule of construction "is that the intention of the lawgiver and the meaning of the law are to be discovered and deducted from a view of the whole, and of every part of the statute, taken and compared together." (Dwarris on Statutes, 188.)

In *People v. Nash,* 1 Idaho, 206, we find the following language in the opinion of the court: "After the verdict the defendant moved in arrest of judgment, and, although several grounds are assigned, we can only consider one of them, because, under section 293, objections which are grounds of demurrer can only be taken advantage of on demurrer, except two, viz., want of jurisdiction of the court, and that the facts do not constitute a public offense. The defendant did not urge the objection on demurrer . . . . that the indictment does not conform to the requirements of sections 233 and 234 of the Criminal Practice Act, and she is precluded from raising it afterward, except the objection that the indictment does not show facts constituting a public offense." This question was fully considered in *People v. Shotwell,* 27 Cal. 402. In de-

ciding this branch of the case we cannot do better, perhaps, than to adopt the language of the court in that case as adapted to our statute: "If section 426, which provides that a motion in arrest of judgment may be founded on any of the defects mentioned in section 285, be read without reference to section 293, its language, it may be concluded, is comprehensive enough to embrace the objection made. But we are not at liberty to disregard the two hundred and ninety-third section, inasmuch as section 426 may be interpreted as referring only to the causes for arresting the judgment which stand unaffected by section 293." The alleged defect in the indictment cannot be considered on a motion in arrest of judgment.

The consideration of the remaining objection, to wit, that the alleged intent must be to commit a felony, involves the construction of the statute upon which the indictment was drawn. The statute reads as follows: "Every person who shall in the night-time forcibly break and enter, etc., any house whatever, or tent, with intent to commit murder, rape, mayhem, larceny or other felony shall be deemed guilty of burglary." (Revised Laws, 332, sec. 59.) It is argued by appellant that from the peculiar arrangement, punctuation, and combination of the words "mayhem, larceny or other felony," the intention of the legislature must be interpreted to be that there can be no burglary except the breaking is combined with the intent to commit a felony. The objection to this argument is that larceny in this territory is not necessarily a felony, and no amount of punctuation and illogical combination of words can make it such. It is stated that our statute was taken from California, and, under the authority of *People v. Murray,* 8 Cal. 519, the meaning of the statute has been adjudicated and determined. The decision referred to was made in 1857. In 1858 the legislature of that state, recognizing the validity of the decision, amended the law to conform to it. In 1864 the statute under consideration was enacted by the Idaho legislature. There was no such statute in California at the time, nor had there been for six years prior to the enactment of our statute. It is hardly reasonable to suppose that our legislature would seek a statute in any state with an adjudication which had been regarded for six years as unworthy to be in

their own statute-book, for the purpose of making it a part of our law. The doctrine that in adopting a statute from one state we adopt the adjudication of it, though true, yet is so limited as to be hardly applicable to the case at bar.

The authority cited by appellant in *Campbell v. Quinlan,* 3 Scam. 288, reads: "The construction supposed to be adopted is one that the statute had received by a uniform series of judicial exposition." A single decision, in force but a year, can hardly be called a series of judicial exposition. We are unable to see that the construction insisted upon necessarily follows the statute, nor do we feel assured that the statute was taken from California. It is an exact copy of the Massa-- chusetts law, and is also the common law upon that subject, except that the word "felony" is left out and specific felonies substituted therefor, and larceny added thereto. At common law burglary is defined to be (2 Archibald's Criminal Practice and Pleading, 263) the crime of breaking, etc., with intent to commit a felony. Under our statute that crime is defined, the act of breaking, etc., with intent to commit robbery, mayhem, larceny or other felony. We have no authority to add the word "grand" or "petit" to the term "larceny." Larceny is general, and includes both grand and petit. In Massachusetts all larceny was a felony, and their law, in the exact words of ours, punished all breakings with intent to commit larceny of any grade. We think our legislature intended the same thing. The Massachusetts law punishes burglaries where the intent to commit larceny over $100 with a more severe penalty than where the amount was less than $100. Our legislature might have made a distinction in the punishment between burglaries with intent to commit grand and petit larceny, but they have not yet done so, and the penalty is the same, whatever the amount intended to have been stolen.

The judgment below is affirmed.

Morgan, C. J., and Prickett, J., concurred.